[Crim. No. 755. Fourth Dist. Aug. 17, 1951.]

THE PEOPLE, Respondent, v. C. J. GAINES, Appellant.

Crittenden, Holley & Gibbs and Philip Crittenden for Appellant.

Edmund G. Brown, Attorney General, and Gilbert Harelson, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant was convicted by a jury of the crime of issuing a check drawn on a bank in Texas in the sum of $85, knowing, at the time, that he did not have sufficient funds or credit with the bank to meet it on presentation. He admitted a prior conviction of a felony.

On September 12, 1950, defendant purchased a 1941 Hudson automobile from a dealer in El Monte, California, and gave a check for $268.80, drawn on the Texas bank to cover the purchase price. On September 18th that bank refused payment. On September 19th defendant's car broke down near La Jolla. It was towed to the Bowman and Vader garage in San Diego. Defendant was given an estimate of $65 for the cost of repairing it. He stated he wanted to pay for the repairs in advance but needed some extra cash so he could return to Los Angeles. He showed a bill of sale for the car. He then made out a check for $85 on the Texas bank covering these amounts. He told the complaining witness he had just sold a restaurant and had put the money in that bank. The complaining witness took the check and gave defendant $20. Two weeks later defendant phoned Bowman and inquired if the check had cleared. (The check had been returned from the Texas bank with payment refused because defendant had no account with that bank.) However, Bowman told defendant he had not heard from the bank and asked defendant to come to the garage because the repairs had been completed on his car. Defendant later went to the garage. He appeared quite nervous and frightened and asked Vader if he would like to buy the car. Vader told him to return in an hour and see his partner Bowman. The defendant never returned and they did not see him again until the time of trial.

The president of the Texas bank testified that he had examined the books of the bank for the period from 1940 to 1951, and defendant had no account with that bank or credit arrangements with it during that period. The check was written on a form of "countercheck," a supply of which was kept

by the bank in the lobby. The officer also testified that seven other checks were returned in September and October, 1950, which were drawn on that bank by "C. J. Gaines."

Defendant testified that when he purchased the car he told the seller that the check would be good by the time it got to the bank. He testified that the complaining witness told him they would like for him to leave the car there until the check cleared; that he had an account in that bank in 1949, and that the last deposit he made there was in the early part of 1950; that when he wrote the check he believed he still had an account open in the bank.

The only contention on this appeal arises from the rulings of the trial court on the question of the admissibility of certain evidence. Defendant first claims that the court erred in sustaining the prosecution's objection, during the cross-examination of the witness Bowman, involving the conversation with defendant over the phone as to whether or not the check cleared, and about the car. Counsel for defendant asked the witness if defendant said anything about *taking the car away from the garage,* and the court sustained the objection as immaterial. In his offer of proof he stated that he wanted this evidence admitted to show defendant had no intention of cheating or defrauding the complaining witness at the time.

While the court might well have overruled the objection defendant cannot claim prejudicial error as there was no question about this fact. Defendant himself testified he said nothing to them about taking the car except when they asked him if he wanted it and he refused because they said it would not hold up very long, and that defendant then told them he would try to sell it. This had little, if any, bearing on defendant's intention to cheat and defraud the complaining witness by reason of the lack of funds in the Texas bank.

The intent of a person to pass a check in violation of section 476a of the Penal Code cannot be made to depend on the failure or success of the entire enterprise. (*People* v. *Porter,* 99 Cal.App.2d 506 [222 P.2d 151] ; *People* v. *Sherman,* 100 Cal.App. 587 [280 P. 708].) Under the circumstances no prejudicial error resulted.

A similar objection was made to the court's ruling in sustaining an objection to a question asked the witness Vader on cross-examination in respect to whether or not Vader said anything to the defendant as to how long the car would hold up after it was repaired. This question appears to be

immaterial. However, since the subject was fully covered by the testimony of the defendant himself no prejudicial error appears.

The final contention requires more consideration. The claim is that the court erred in refusing to let the defendant testify that on the day before the check was drawn he had made some arrangements with some named person in Big Springs, Texas, who owed defendant $500, to put it, on the morning of the following day, to defendant's credit in the bank at Seminole, Texas, upon which bank the check was drawn. The court limited defendant's testimony to any arrangements he may have made with the bank, but would not allow any testimony pertaining to any claimed arrangements made with third parties. An offer of proof to this effect was made and denied.

In support of the admissibility of this proffered testimony of defendant, he cites *People* v. *Becker*, 137 Cal.App. 349 [30 P.2d 562], which is a case where defendant had no account in the bank but testified he had made arrangements with a Mrs. Zoll to open the account the next business day after the check was issued. In corroboration of his own testimony to this effect he offered the testimony of Mrs. Zoll that she agreed to furnish the money for that purpose. The court sustained an objection to her testimony. A reversal of the judgment of conviction resulted.

*People* v. *King*, 63 Cal.App. 674 [219 P. 753], upon which the prosecution relies, was there analyzed. In the King case the defendant drew a check on a bank where he had no account. He testified that there was money due him which he intended to deposit in the bank the day following but suffered a nervous breakdown and did not make the deposit as planned. On appeal the court stated that such a claimed defense would be no defense to the crime charged and his testimony as to that matter "was wholly irrelevant and immaterial to the issue."

The holding in the Becker case is criticized in Fricke on California Criminal Law, 4th ed. [1951] pages 280-281, where it is said:

". . . The decision, reversing the conviction because the defendant was not allowed to testify to his intent to open such account, overlooks the fact that defendant obtained a watch by giving for it a check on the bank in which he had no account or credit whereby the seller of the watch was defrauded and the fact that the defendant intended to make

the check good by thereafter opening an account is no more a defense than if he intended in some other manner to reimburse the vendor. . . ."

Defendant points out that in the King case no brief was filed by the appellant. The statement that the facts constituted no defense and that defendant's testimony in this respect was "irrelevant and immaterial" was dicta and unnecessary to the decision in that case because the evidence was admitted and the jury rejected the defendant's story. No hearing in the Supreme Court was asked. In the King case defendant had no account in the bank. Here, the defendant testified he had an account with the bank notwithstanding the testimony of the banker to the contrary.

The Becker case holds that these comments were "obiter," and directly holds such evidence as here offered to be admissible to show intent of "reasonable expectation of payment," citing 35 American Law Reports, page 384, and, in effect, the Supreme Court refused to adopt the "obiter" as a correct interpretation of the law. A petition for hearing in the Supreme Court was denied. See, also, *People* v. *Kauffman,* 48 Cal.App.2d 393 [119 P.2d 998].

■ It thus appears that the "intent to defraud" is an essential element of the crime. It is the "gist of the offense." (*People* v. *Bullock,* 123 Cal.App. 299 [11 P.2d 441]; *People* v. *Wilkins,* 67 Cal.App. 758 [228 P. 367].) ■ It must be and is the subject of evidence in the same manner and to the same extent, depending on the same general rules of procedure, as is any other necessary fact in the case. (*People* v. *Landman,* 103 Cal. 577, 580 [37 P. 518]; 8 Cal.Jur. p. 25 et seq., § 144; 10 Cal.Jur. 832 et seq., § 117.) ■ A witness may be examined as to the intent with which he did an act, when that intent is material. (*People* v. *Morley,* 89 Cal.App. 451, 457 [265 P. 276].) This is true even where the defendant is the witness and his intent is an element of the crime charged. (*People* v. *Sheasbey,* 82 Cal.App. 459, 464 [255 P. 836].) ■ It plainly appears that the refusal to allow defendant to testify on this subject was error, even though the court might well have believed, from the evidence here produced, that defendant was testifying falsely. (*Fanning* v. *Green,* 156 Cal. 279 [104 P. 308].) This was a question for the jury to determine. (*People* v. *Wepplo,* 78 Cal.App.2d Supp. 959, 965 [178 P.2d 853]; *People* v. *Rose,* 9 Cal.App.2d 174 [48 P.2d 1009].)

The only question is whether such error was prejudicial. In determining this question, had defendant been given the right to fully testify on this subject and bring in evidence supporting his offer of proof, the jury might well have disagreed on the question or could ·have returned a verdict in defendant's favor. This conclusion is supported by defendant's argument in his closing brief reciting that defendant did go to trial on the same issue before another judge who allowed him to testify to the facts set forth in his offer of proof and a disagreement of the jury resulted. Upon a retrial he was denied this right. We conclude that the ruling of the trial court was therefore prejudicially erroneous. (*People* v. *Geibel,* 93 Cal.App.2d 147, 179 [208 P.2d 743].)

Judgment reversed and a new trial ordered.

Barnard, P. J., and Mussell, J., concurred.